**Dewey DEEL, Plaintiff,**

v.

**John W. GARDNER, Secretary Health, Education & Welfare, Defendant.**
**Civ. A. No. 68–C–11–A.**

United States District Court
W. D. Virginia,
Abingdon Division.
July 13, 1968.

**106**

Robert T. Winston, Norton, Va., for plaintiff.

James P. Brice, Asst. U. S. Atty., Roanoke, Va., for defendant.

### OPINION and JUDGMENT

DALTON, Chief Judge.

Pursuant to 42 U.S.C.A. § 405(g), the claimant, Dewey Deel, has requested this court to review the final decision of the Secretary of Health, Education and Welfare delivered on January 18, 1968. This final decision delivered by the Appeals Council was adverse to claimant's request for (1) disability insurance benefits as provided for in the Social Security Act § 223; 42 U.S.C.A. § 423, as amended, and for (2) the establishment of a period of disability under the Social Security Act § 216(i), 42 U.S.C.A. § 416(i), as amended.

The court's only purpose in this review is to determine if there was "substantial evidence" in the proceedings to support the Secretary's decision. 42 U.S.C.A. § 405(g). If this court finds such "substantial evidence", our inquiry must cease, and the Secretary's decision will be conclusive. Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). The function of this court is not to review the evidence and factual issues, but only to determine if there was sufficient evidence to support the administrative findings.

### SUMMARY OF THE TESTIMONY OF CLAIMANT

Claimant testified at two separate hearings held by Social Security Hearing Examiners on January 13, 1965, and April 5, 1967, at Pikeville, Kentucky, substantially as follows:

He was born on January 1, 1917. He is married, has eight children, all under eighteen years of age, and presently lives in Buchanan County, Virginia, on a thirteen acre farm owned by his father. Claimant received the equivalent of a fifth grade education and can read and write. He has worked as a logger and as a coal miner. His last substantial gainful employment was driving a team of horses to skid logs in December, 1953. He has not worked or sought work since that time because of arthritis and a stomach ulcer. He first noticed the painful symptoms of the ulcer and arthritis in the early 1950's, and by December, 1953 his ailments had become so painful he could not work. When he stopped work in 1953, his right shoulder hurt as well as his back and legs, and he became nervous and nauseated to the point of vomiting whenever he worked. His symptoms have gotten progressively worse. He now seldom rides in a car or leaves the house, and he is unable to help raise a garden or do even the lightest labor around the house.

## SUMMARY OF THE MEDICAL EVIDENCE

The earliest medical report submitted in evidence is dated August 31, 1954. Dr. R. B. Wilson's examination of the claimant at that time revealed marked epigastric tenderness and a "fine tremor". An X-ray taken at this time showed a gastric ulcer, and Dr. Wilson stated in his report that claimant was completely disabled and should have been hospitalized several weeks earlier. Dr. Wilson's diagnosis contained no mention of arthritis or arthritic complaints.

On May 1, 1956, Dr. Irvin G. Graffin examined the claimant, his diagnosis being:

1. Essential hypertension—mild.

2. Active duodenal ulcer proven by X-ray.

Dr. Graffin recommended surgery to cure the ulcer and was of the opinion that claimant's major disability could be cured with treatment. The court notes again that Dr. Graffin reported no symptoms or complaints of arthritis.

On July 16, 1956, Dr. G. D. Vermilya, a surgeon, examined claimant and reported that claimant complained of epigastric pain with some vomiting and pain between shoulders. An X-ray taken at that time revealed an ulcer crater approximately three or four m. m. in diameter, located in the duodenal bulb but with no appreciable obstruction. Dr. Vermilya advised a rigid ulcer regimen for eight weeks before considering surgery. This is the first medical report in evidence referring to any joint pain or other arthritic type symptoms of claimant.

On September 16, 1956, claimant returned to see Dr. Vermilya and reported that he was feeling much better. Claimant had some spasm of the left lower back muscles, but an X-ray, while showing some irritation of the duodenum, did not show the previously identified ulcer.

On September 6, 1957, Dr. T. C. Sutherland of Haysi, Virginia who had been treating claimant regularly for many years, reported that claimant had arthritis (possibly bursitis) in his right arm and shoulder rendering his arm practically useless. This is the first medical report in evidence diagnosing possible arthritis as one of claimant's conditions.

On September 20, 1957, claimant was examined by Dr. J. A. Robinson, who reported that claimant had suffered indigestion and epigastric pain for four years and had suffered pain about the right upper extremity [right shoulder and arm] for approximately one year.

On April 29, 1958, Dr. Sutherland again examined claimant and reported that he had taken treatment for the arthritis and stomach trouble for several years.

On July 14, 1958, Dr. E. L. Gage, a neurosurgeon, examined claimant for alleged low back pain. Claimant stated to Dr. Gage at that time that his back pain was of about two years duration. Dr. Gage described claimant as tense, nervous, and psychoneurotic. An X-ray of the lumbosacral spine was reported as showing "no bone pathology". Dr. Gage reported, "minimal splinting of the low back with forward bending being segmental otherwise", giving his opinion that claimant had "A low back disability which could not prevent him from doing some work."

There were subsequent medical reports but there is no need to recite them at this time.

Claimant's social security earnings record established that his insured status under the disability provisions of the Social Security Act expired on December 31, 1955.

■ To comply with the provisions of the Social Security Act, claimant, therefore, had to prove that his disability began on or before December 31, 1955. Carter v. Celebrezze, 367 F.2d 382 (4th Cir. 1966). Thus, the present state of claimant's health is irrelevant. The Secretary's ruling was based only on claimant's condition as of December 31, 1955, and the fact that claimant may have become disabled since December 31, 1955,

could not disturb the Secretary's decision.

The court has found no evidence in the record to prove that claimant was suffering from arthritis in December, 1955, except for the testimony of the claimant and his wife—and the credibility of this testimony is in question. Claimant and his wife testified in the hearings in 1965 and 1967 that claimant had to quit work in December, 1953 because of his arthritis as well as because of his ulcer and that furthermore, claimant could not resume work because of his arthritis in 1956 even though an X-ray ordered by Dr. Vermilya did not show the previously identified ulcer.

The testimony was given by claimant and his wife in hearings held twelve and fifteen years respectively after claimant stopped work in December, 1953. It is only normal for the memory to fade over such a lapse of time, and claimant and his wife cannot be expected to remember if his arthritic condition had begun before December 31, 1955, and if so, what claimant's condition was on that particular date. Both claimant and his wife admitted in the hearings that they could not remember the year in which claimant's back and shoulder started to hurt —except that it was in the early 1950's.

The medical testimony is in conflict with claimant's testimony. The medical report dated August 31, 1954, was the only report in evidence prior to December 31, 1955, and this report contained no mention of any pain in claimant's right shoulder, back or other region which could be considered a symptom of arthritis. The only abnormality mentioned in said report was claimant's ulcer. The second medical report in evidence, dated May 1, 1956, made no reference to any joint pain or arthritic symptom either. Again, the report shows that claimant complained only of his stomach pain. In the medical report submitted by Dr. J. A. Robinson, reporting the examination of claimant on September 20, 1957, Dr. Robinson states that claimant had suffered pain in his upper right extremities for approximately one year. This would pinpoint the beginning of claimant's shoulder pain in 1956, at least three years after claimant alleges. Again on July 14, 1958, Dr. E. L. Gage's medical report states that claimant told the Doctor that his back pain at that time was of about two years duration, again pinpointing claimant's back pain in 1956. Claimant may have contradicted his own testimony in his original application to establish disability filed on August 28, 1957. Claimant stated in this application that he quit work in November, 1953, because of his stomach pain and nausea without any reference to back pain or arthritis.

There is obviously a conflict in the evidence as to the alleged arthritis on or before December 31, 1955. The medical reports and the inferences therefrom tend to disprove any excruciating pain resulting from arthritis before December 31, 1955. The medical reports and claimant's statements made on the application must be considered "substantial evidence" to support the Secretary's decision. Where there is a conflict in the evidence, the Secretary's finding is conclusive. Snyder v. Ribicoff, supra. The court thus affirms the Secretary's decision to the extent that claimant was not disabled on or before December 31, 1955, due to arthritis. Compare Sabbagha v. Celebrezze, 345 F.2d 509 (4th Cir. 1965).

The duodenal ulcer must be considered separately. There is competent uncontradicted evidence that claimant suffered from an ulcer prior to 1955. Every medical report on record corroborated the presence of stomach trouble and the presence of a duodenal ulcer, three or four inches in diameter. Claimant and his wife testified before the Social Security Hearing Examiners that claimant had to quit work in 1953 because of the ulcer condition. In the first medical report in evidence, dated August 31, 1954, Dr. Wilson said claimant was completely disabled at that time. Again on September 20, 1957, Dr. J. A. Robinson, examined claimant and

considered him unable to undertake gainful employment.

But to qualify for a period of disability or disability insurance benefits, claimant had to show under both Sections 223 and 216(i) of the Social Security Act, as amended, that his disability " * * * can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months, * * *." The Secretary's decision was that claimant did not prove any such disability. The court finds "substantial evidence" to support the Secretary's decision.

On May 1, 1956, Dr. Graffin said claimant's disability could be removed by treatment. Dr. Wilson, who examined claimant on August 31, 1954, and found him disabled at that time, advised claimant to be immediately hospitalized, but the report gives no information as to how long the condition would persist. On September 18, 1956, when claimant returned to Dr. Vermilya for the second examination, the previously identified ulcer was not found in the X-ray then taken. At this time Dr. Vermilya felt claimant had healed sufficiently to present any consideration of surgery and advised claimant to continue the same regime. It is shown on page 9 of the transcript of the hearing held on January 13, 1965, before William Preuer, a Hearing Examiner for the Social Security Administration, that claimant himself stated that "it [the ulcer] did heal" in 1956 under treatment by Dr. Vermilya.

It appears to the court that there is "substantial evidence" to show that the ulcer was of a remedial nature if claimant pursued the proper course of treatment. In Bradey v. Ribicoff, 296 F.2d 855, at p. 857 (1962), Judge Spencer Bell said that a remedial ailment could not be the basis of a claim and "that the express terms of the [Social Security] Act require a reasonable showing of the permanence of the disability."

For the reasons stated in this opinion and upon mature consideration of the record, this court finds that there was "substantial evidence" to support the Secretary's finding that claimant's ulcer was remedial and that claimant was not disabled on or before December 31, 1955, by reason of arthritis or a stomach ulcer.

It is, therefore, adjudged and ordered that the Secretary's decision be affirmed.

The clerk is directed to send certified copies of this opinion and judgment to counsel of record.